**FILED**
**CLERK**

3:04 pm, May 21, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
PETER ABRAHAM, JODI ABRAHAM,
PERRY GIAMBRUNO, and JO-ANN
GIAMBRUNO,

                    Plaintiffs,

          -against-

THE TOWN OF HUNTINGTON, THE TOWN
BOARD OF THE TOWN OF HUNTINGTON,
FRANK P. PETRONE as Supervisor of the
Town of Huntington, SUSAN A. BERLAND as
Councilwoman of the Town of Huntington,
EUGENE COOK as Councilman of the Town of
Huntington, MARK A. CUTHBERTSON as
Councilman of the Town of Huntington, and
CROWN CASTLE NG EAST LLC,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-03616 (ADS)(SIL)

**APPEARANCES:**

**Campanelli & Associates, P.C.**
*Counsel for the Plaintiffs*
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
      By:    Andrew J. Campanelli, Esq.,
              Amanda R. Disken, Esq., Of Counsel


**Buchman Ingersoll & Rooney, P.C.**
*Counsel for Defendants the Town of Huntington, The Town Board of the Town of Huntington,*
*Frank P. Petrone as Supervisor of the Town of Huntington, Susan A. Berland as Councilwoman*
*of the Town of Huntington, Eugene Cook as Councilman of the Town of Huntington and Mark A.*
*Cuthbertson as Councilman of the Town of Huntington*
1290 Avenue of the Americas
New York, NY 10104
      By:    David J. Porter, Esq.,
              Jacqueline M. Weyand, Esq., Of Counsel

**Snyder & Snyder, LLP**
*Counsel for Defendant Crown Castle NG East LLC*
94 White Plains Road
Tarrytown, NY 10591
      By:    Robert D. Gaudioso, Esq., Of Counsel

**SPATT, District Judge**:

On June 15, 2017, Peter Abraham, Jodi Abraham (together, the "Abrahams"), Perry Giambruno, and Jo-Ann Giambruno (together, the "Giambrunos") (all together, the "Plaintiffs"), commenced this action in this Court against the Town of Huntington (the "Town"), the Town Board of the Town of Huntington (the "Board"), Frank P. Petrone as Supervisor of the Town of Huntington ("Petrone"), Susan A. Berland as Councilwoman of the Town of Huntington ("Berlannd"), Eugene Cook as Councilman of the Town of Huntington ("Cook"), Mark A. Cuthbertson as Councilman of the Town of Huntington ("Cuthbertson") (together, the "Town Defendants"), and Crown Castle NG East LLC ("Crown Castle") (all together, the "Defendants"). The Plaintiffs allege causes of action under 42 U.S.C. § 1983. They seek declaratory relief stating that (a) numerous constitutional rights of the Plaintiffs have been violated; (b) the Telecommunications Act of 1996 ("TCA") as applied by the Town is unconstitutional; and (c) the approvals and permits for Crown Castle's equipment at issue are null and void. In addition, the Plaintiffs seek to have the equipment at issue removed as well as nominal damages and attorneys fees.

Presently before the Court are a series of motions filed by the Town Defendants and Crown Castle. Both the Town Defendants and Crown Castle filed separate motions to dismiss, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted. In addition, the Town

Defendants moved to strike certain material submitted with the Plaintiffs' opposition brief, pursuant to FED. R. CIV. P. 12.

# I.  BACKGROUND

## A.  THE FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiffs' complaint, and for the purposes of the instant motions, they are construed in favor of the Plaintiffs.

At all times relevant to this case, the Abrahams lived at 44 Glenna Little Trail, Huntington, NY and the Giambrunos lived at 12 Cider Mill Lane, Huntington, NY.  Compl. ¶¶ 5-6.

On August 16, 2016, the Board adopted Resolution No. 2016-399, which allowed Petrone, as Town Supervisor, to execute a license agreement with Crown Castle "for the proposed use and occupancy by Crown Castle of the public ways as is necessary for the installation and operation of its [Distributed Antenna System ("DAS")]."  DAS is a "[s]ystem that uses passive (non-powered) or active (powered) networking equipment, such as antennas, fiber-optic, coaxial cable and other technologies to extend radio frequency ("RF") coverage (of any technology) inside a building."  *DAS (distributed antenna system)*, GARTNER, https://www.gartner.com/it-glossary/das-distributed-antenna-system (last visited May 16, 2018).  The Plaintiffs contend that there was a "sham public hearing" held prior to August 16, 2016 during which no specific sites for DAS antennas were discussed.  Compl. ¶ 54.  On August 23, 2016, the Town executed a license agreement with Crown Castle that provided for the installation and approval of a DAS fiber-based telecommunications network within the public right-of-way.

The complaint contends that on October 19, 2016, Crown Castle filed applications with the Town to install DAS antennas on cellular poles on public rights-of-way near the Abrahams' property and the Giambrunos' property.  Compl. ¶¶ 62, 69.

On November 2, 2016, the Huntington Town Planning Board adopted a resolution approving a series of applications from Crown Castle to install several new DAS antennas along the public rights-of-way, including one adjacent to the Abrahams, pole N847, and another adjacent to the Giambrunos, pole 829. Compl. ¶ 58. No notice was purportedly provided to the Plaintiffs that such a resolution was being considered by the Huntington Town Planning Board. Compl. ¶ 59. As a condition of the resolution, Crown Castle was required to obtain all the necessary permits for the proposed DAS antennas. Compl. ¶ 60.

On November 7, 2016, the Town granted Crown Castle's building permits, which allowed for the installation of DAS antennas on existing poles on public rights-of-way near both the Abrahams' and Giambrunos' properties. Compl. ¶¶ 65, 72.

Crown Castle installed a DAS antenna adjacent to the Abrahams' property on December 4, 2016, and another one adjacent to the Giambrunos' property on December 9, 2016. The Plaintiffs allege that Crown Castle installed the DAS antennas on new public utility poles at the rights-of-way near the Abrahams' and Giambrunos' properties, rather than existing poles pursuant to the November 7, 2016 permits issued by the Town. Compl. ¶¶ 66-67.

According to the complaint, Crown Castle never obtained the requisite permits, and submitted materially false building permit applications as well as false affidavits in support in such applications. Compl. ¶¶ 61, 63-64, 70-71 Further, the Plaintiffs contend that the Town Defendants conspired with Crown Castle "to circumvent the Town's own zoning laws, avoid the public hearings which were required by such zoning laws, and of greatest import, to ensure that homeowners, such as the plaintiffs, would be deprived of any notice or opportunity to be heard at any time before the [DAS antennas] were built in extremely close proximity to their respective homes." Compl. ¶ 50.

**B.  THE RELEVANT PROCEDURAL HISTORY**

On June 15, 2017, the Plaintiffs filed the above-mentioned complaint in this Court.

On September 15, 2017, the Town Defendants moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiffs' allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted.  That same day, Crown Castle filed a separate motion under Rule 12(b)(6) also seeking to dismiss the complaint.  In response to the documents filed in support of the Plaintiffs' memorandum of law in opposition of the Defendants' motions to dismiss, Huntington filed a motion to strike, pursuant to Rule 12, seeking to strike certain documents submitted by the Plaintiffs.  All of the above-mentioned motions are fully briefed.

## II.  MOTION TO STRIKE

The Defendants seek to have the following materials, which were submitted in support of the Plaintiffs' memorandum in opposition, stricken from consideration regarding the instant motions to dismiss: (1) Exhibits E through I of the Declaration of Andrew J. Campanelli, Docket Entry ("DE") 29 ("Campanelli Decl."); (2) the Affidavit of Peter Abraham, DE 28 ("Abraham Affidavit"); and (3) certain allegedly unsupported factual assertions in the Plaintiffs' memorandum in opposition.  As a preliminary matter, the Court must first address whether these materials may be properly considered by the Court for the purposes of adjudicating the instant motions to dismiss.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citations and quotation marks omitted); *accord Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to

Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint").  In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

## A.  THE ABRAHAM AFFIDAVIT

The Town Defendants seek to strike the Abraham Affidavit, a fifty-two paragraph affidavit by Peter Abraham, one of the Plaintiffs in this action.  They argue that it should not be considered on a Rule 12(b)(6) motion in its entirety, and that it contains a series of statements that are improper.

Rule 12(d) states, *inter alia*:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d). Rule 56(e) instructs that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein." FED. R. CIV. P. 56(e); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (requiring affidavits to be based on personal knowledge); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("Rule 56(e) specifically requires that affidavits … be based upon personal knowledge."); *Caldwell v. Am. Basketball Ass'n.*, 825 F. Supp. 558, 572 (S.D.N.Y. 1993) (granting motion to strike an affidavit based on hearsay), *aff'd*, 66 F.3d 523 (2d Cir. 1995).

28 U.S.C. § 1746 must also be considered by the Court. It states, in pertinent part:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

* * *

(2) If executed within the United States, ...: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

28 U.S.C. § 1746.

The Abraham Affidavit starts with the following language, "PETER ABRAHAM, being duly sworn, deposes and says: … I am one of the Plaintiffs in this Action. I am fully familiar with the facts and circumstances set forth herein from my own personal knowledge." Abraham Affidavit ¶ 1. It is signed by Abraham and notarized by Andrew J. Campanelli, Abraham's

attorney. However, the Abraham Affidavit is fundamentally deficient as it fails to certify that it is made under penalty of perjury. *See* 28 U.S.C. § 1746. This requirement ensures the trustworthiness of a declarant's statements by subjecting the contents of the declaration to the risk of potential criminal penalties. *See id*. Without it, the Court will not rely upon the Abraham Declaration for the purposes of adjudicating the instant motions to dismiss.

Even if the Abraham Affidavit was not fundamentally deficient, a review of the affidavit reveals a plethora of material that would be inadmissible. *See* FED. R. EVID. 402. It contains statements that are not based upon personal knowledge, conclusory allegations, legal arguments, and hearsay statements. *See, e.g.*, DE 28 ¶¶ 24 ("But if an applicant seeks to install a *new* pole, then a Special Use Permit is absolutely required, and to entertain a Special Use Permit application, the Town is required to hold a public hearing. In addition, the applicant is required to provide advance written notice of the public hearing to all property owners within 500 feet of the site for the proposed new installation."), 28 ("Upon the filing of these applications, the Town and Crown Castle apparently realized that, under the Town Code, since these were 'new poles', Crown Castle would be required to apply for Special Use Permits for these new poles …"), 29 ("Upon information and belief, the Town and Crown Castle deliberately conspired to circumvent all of those Code requirements, by causing the Town to issue materially false building permits in response to the applications which had been filed for these sites."), 37 ("This means, quite simply, that the FCC has no idea where these wireless facilities are, much less to what levels of radiation they are exposing members of the general public, or my family."), 56 ("Based upon the foregoing, I respectfully request that the defendants' motions to dismiss be denied in their entirety."). Regardless of the deficiency of the affidavit itself, the Court would strike the vast majority of the statements in the affidavit as improper and inadmissible. *Morris v. Northrop Grumman Corp.*, 37

F. Supp. 2d 556, 568 (E.D.N.Y. 1999) (Spatt, J.) ("Hearsay statements set forth in an affidavit …

which cannot be categorized as a hearsay exception, conclusory allegations, legal arguments, and

statements not based upon personal knowledge, may be stricken." (internal citations omitted)).

Further, as the affidavit does not fall within any of the recognized categories of documents

that are appropriate to consider on a motion to dismiss, the Court exercises its discretion to decline

to consider it at this time. *See Wilson v. Southampton Hosp.*, No. 14-cv-5884, 2015 WL 5124481,

at *8 (E.D.N.Y. Aug. 28, 2015) (Spatt, J.).

Accordingly, the Court grants the Town Defendants' motion to strike as it pertains to the

Abraham Affidavit.

**B.  THE CAMPANELLI DECLARATION EXHIBITS**

The Town Defendants' contend that exhibits E through I of the Campanelli Decl. should

not receive judicial notice and should be stricken.  The Plaintiffs counter that the documents at

issue are public records.

After examining the documents, the Court finds that Exhibits E, F, G, and I are public

records.  As such, the Court may take judicial notice of their existence.  These documents may

only be used by the Court to demonstrate the existence of such a document or knowledge of a

given fact at a particular time. *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 2:17-cv-

04442, 2018 WL 1542670, at *4 (E.D.N.Y. Mar. 29, 2018) (Spatt, J.) (citing *Singh v. Wells*, No.

1:09-cv-500, 2010 WL 3259996, at *2 n.2 (N.D.N.Y. Aug. 17, 2010)).  The Plaintiffs have not

asked this Court to take judicial notice of these documents for the truth of the matter asserted.  As

such, the Court exercises its discretion to decline to do so.

Exhibit H, a copy of an article from the webpage Hamptons.com, is not a public record and

does not fall within any of the above-mentioned categories of documents that may be judicially

noticed.  It appears that it is referenced in the Abraham Affidavit, a document which this Court has already found to be improper.  As such, Exhibit H is stricken from the record for the purposes of adjudicating these motions.

Accordingly, the Town Defendants' motion to strike as it pertains to Exhibits E through I is granted in part and denied in part.

### C.  ALLEGED UNSUPPORTED FACTUAL ASSERTIONS IN THE PLAINTIFFS' BRIEF

Finally, the Town Defendants contest portions of the Plaintiffs' opposition to the Defendants' motions to dismiss, claiming that it contains unsupported factual assertions that are not based on or supported by the complaint.  All of the sections of the brief that have been identified by the Town Defendants either contain factual assertions supported only by the Abraham Affidavit or statements that use public records to prove the truth of the matter asserted.  As this Court has excluded the Abraham Affidavit and declines to allow the use of Exhibits E, F, G, & I to prove the truth of the matter asserted, the identified portions of the Plaintiffs' brief will not be considered for the purposes of adjudicating this motion.  After review of the Plaintiffs' brief, the Court will exclude any and all portions that either (1) are supported only by the Abraham Affidavit; or (2) attempt to use Exhibits E, F, G & I for the truth of the matter asserted.

Accordingly, the Town Defendants' motion to strike as it pertains to relevant portions of the Plaintiffs' brief in opposition of the Defendants' motions to dismiss is granted.

### III.  MOTIONS TO DISMISS

### A.  STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs.  *See, e.g., Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d

561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. TCA PREEMPTION

### 1. Preemption

Preemption doctrine is rooted within the Supremacy Clause of the United States Constitution, which "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211, 6 L. Ed. 23 (1824)). There are two types of preemption: express and implied. Express preemption occurs when a federal law expressly states that Congress intends to preempt state or local legislation. *See, e.g.*, *Ass'n of Int'l Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 607 (2d Cir. 1996). Implied preemption transpires "either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, … or when state law is in actual in conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1482, 131 L. Ed. 2d 385 (1995). The former is referred to as conflict preemption and the latter is referred to as field preemption.

Preemption may occur either in whole or in part. *See, e.g.*, *Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd.*, 467 US. 461, 469, 104 S. Ct. 2518, 81 L. Ed. 2d 399 (1984) ("[I]f Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law."); *Campbell v. Hussey*, 368 U.S. 297, 300-02, 82 S. Ct. 327, 7 L. Ed. 2d 299 (1961). When state or local law is preempted, that entity is prohibited "from regulating within a protected zone, whether it be a zone protected and reserved for market freedom … or for [federal] jurisdiction." *Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224, 113 S. Ct. 1190, 122 L. Ed. 2d 565 (1993). Further, federal regulations have the same preemptive effect as federal

statutes. *See Fid. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1983).

At issue in the present case is the doctrine of "field preemption," a form whereby a state or local law is preempted because the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947) (internal citations omitted). "As is always the case in preemption analysis, Congressional intent is the 'ultimate touchstone.'" *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 320 (2d Cir. 2000) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)).

## 2. TCPA

The TCA was enacted "to provide a pro-competitive, de-regulatory national policy framework designed to accelerate private sector deployment of advanced telecommunications and information technologies and services … by opening all telecommunications markets to competition[.]" *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 493 (2d Cir. 1999) (quoting H.R. Conf. Rep. No. 104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124.). To achieve this, the TCA developed a regulatory scheme that delineated the responsibilities of the Federal Communications Commission ("FCC"), as well as state and local authorities in determining whether and how cellular communications technology may be built. *See* 47 U.S.C. § 332(c).

While Section 332(c)(7)(A) provides local and state zoning agencies the authority "over decisions regarding placement, construction, and modification of personal wireless service facilities[,]" 47 U.S.C. § 332(c)(7)(A), the FCC has the power to "make such distribution of

licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each." 47 U.S.C. § 307(b). To do this, the FCC may "make reasonable regulations … governing the interference potential of devices which in their operation are capable of emitting radio frequency energy by radiation, conduction, or other means in sufficient degree to cause harmful interference to radio communications." 47 U.S.C. § 302a(a).

Section 303 empowers the FCC to regulate radio broadcasting technology and RF interference exclusively. To accomplish this, the FCC may "[d]etermine the location of classes of stations or individual stations, … [r]egulate the kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein, … [as well as m]ake such regulations not inconsistent with the law as it may deem necessary to prevent interference between stations[.]" 47 U.S.C. § 303.

These provisions elucidate Congress's intent that the FCC exclusively regulate technical matters of radio broadcasting technology. *See Head v. N.M. Bd. of Exam'rs in Optometry*, 374 U.S. 424, 430 n.6, 83 S. Ct. 1759, 10 L. Ed. 2d 983 (1963). This includes the authority to regulate personal wireless communications on the basis of health effects of RF interference. *Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 96 (2d Cir 2000). Specifically, the statute states that "[n]o state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of environmental effects of radio frequency emissions to the extent that such facilities comply with the [FCC's] regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

In *Cellular Phone Taskforce*, the Second Circuit addressed the preemption provision of the TCA, holding that Section 332(c)(7)(B)(iv) "preempt[s] state and local governments from

regulating the placement, construction or modification of personal wireless service facilities on the basis of the health effects of RF radiation where the facilities would operate within levels determined by the FCC to be safe." 205 F.3d at 88; *Freeman,* 204 F.3d at 320 ("federal law has preempted the field of RF interference regulation"). *See generally City of New York v. FCC*, 486 U.S. 57, 63-64, 108 S. Ct. 1637, 100 L. Ed. 2d 48 (1988); *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698–700, 104 S. Ct. 2694, 81 L. Ed. 2d 580 (1984). "[There is] no doubt that Congress may preempt state and local governments from regulating the operation and construction … of personal wireless communications facilities." *Cellular Phone Taskforce*, 205 F.3d at 96.

### 3. Application to the Facts

The Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201 that, among other things, the Town is "empowered to enact and enforce regulations to protect its citizenry … against overexposure to RF radiation being emitted by wireless facilities which are not FCC compliant," that Section 332(c)(7)(B)(iv) of the TCA is unconstitutional as interpreted and applied against the Plaintiffs, that nullifies the current permits issued, and that removes the wireless facilities near the Plaintiffs' property. *See* Compl. ¶ 179. The Plaintiffs seek this relief in connection with multiple claims. *See generally* Compl. Admittedly, the Plaintiffs are concerned about the levels of RF interference at their respective properties and the health effects caused by those wireless communications devices that were installed on public rights-of-way close to their properties. *See* Compl. ¶¶ 184-85.

The Town Defendants contend that the core of the Plaintiffs' claims are the Town's alleged misinterpretation and misapplication of the TCA. *See* Compl. ¶ 109. Accordingly, they claim that the entirety of the Plaintiffs' lawsuit runs afoul of the statutory framework intended by Congress regarding the TCA, for the FCC to exclusively regulate RF interference.

15

Congress intended that the FCC act as the exclusive regulator regarding RF interference. *See Cellular Phone Taskforce*, 205 F.3d at 96; *Cellular Tel. Co*, 166 F.3d at 490. The FCC has utilized its rule-making authority to regulate RF interference. *See* 47 C.F.R. § 73.318. Therefore, at first glance, much of the Plaintiffs' requested relief, which the Court detailed above, would fail as a matter of law, as the Town is preempted from making a determination of an application or permit on the basis of the effects of RF interference. *See Cellular Phone Taskforce*, 205 F.3d at 96. However, as the Second Circuit noted in *Cellular Phone Taskforce*, "state and local authorities may not make siting decisions based on fears that RF emissions from cellular towers pose environmental risks, *so long as the RF emissions fall within FCC established guidelines*[.]" *Id*. at 96 (emphasis added). In other words, as long as there is no factual dispute as to whether RF interference fall within the FCC guidelines, an attempt by the Town to make a determination as to an application or permit based on the risks posed by RF interference would be preempted by federal law.

The Plaintiffs contend in their opposition brief that the RF interference exceeds the emissions limits established by the FCC and as such, are not-preempted by the TCA. However, in connection with the project, Crown Castle's application included an independent, third-party report on the RF compliance of the facilities at issue, entitled the Antenna Site FCC RF Compliance Assessment and Report prepared for Crown Castle's Pole-Mounted DAS Operations in Rockland, Nassau and Suffolk Counties, dated January 26, 2016. *See* DE 32. As discussed in Section II, "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano,* 2015 WL 5124796 (internal citation and quotation marks omitted).

The Town Defendants have failed to request that the Court take judicial notice of the document. This failure is enough to prevent this Court from taking judicial notice of the instant third-party report. *See Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1161 n.7 (S.D. Cal. 2008) ("[D]ocuments, which are neither referenced in Plaintiffs' complaint nor the subject of a proper request for judicial notice, may not be considered on a motion to dismiss." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)). Furthermore, the Plaintiffs do not cite or refer to the report in their complaint nor is it attached or incorporated by reference. While the Court has the discretion to take judicial notice of certain public records, *see, e.g.*, *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), the Court is unable to conclude that a third-party report prepared by a non-government entity constitutes a public record. This report was prepared by Pinnacle Telecom Group for Crown Castle in relation to their application. While it was received by the Town of Huntington Department of Planning & Environment, the Court declines to label it as a public record and rely on it to show that the facilities at issue were certified as FCC-compliant.

As such, at this early stage of the litigation, prior to meaningful discovery and the ability to introduce evidence outside the pleadings, the Court is unable to conclude as a matter of law, that the RF interference at DAS antennas near the Plaintiffs' properties "comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). The existence of a dispute regarding whether the DAS antennas were in compliance with the FCC regulations precludes preemption at the motion to dismiss stage.

## C. DUE PROCESS CLAIMS

The Town Defendants argue that the Plaintiffs' substantive and procedural due process claims must be dismissed as a matter of law due to the lack of a cognizable property right recognized by state law or any other liberty interest. *See* DE 22 at 6-9. The Court agrees.

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his/]her federal statutory rights, or [his/]her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir.1998) (citing *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

To plead a procedural due process claim, the Court must apply a two-part test. "First, we ask 'whether there exists a … property interest of which a person has been deprived.' … If so, we then 'ask whether the procedures followed by the State were constitutionally sufficient.'" *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 428 (2d Cir. 2011) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011)). For a substantive due process claim, a plaintiff "must first establish a valid property interest within the meaning of the Constitution. … Second, the party must demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest." *Crawley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992)); *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (same).

As detailed above, for each claim, a plaintiff must demonstrate the existence of a federally protected property right to the relief sought. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor*, 51 F. Supp. 2d 255, 261 (E.D.N.Y. 1999) (Spatt, J.). "Property interests 'are not created by the Constitution,' but 'are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Oneida Indian Nation of N.Y.*, 665 F.3d at 428 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

"To have a property interest … a person clearly must have more than an abstract need or desire for it. … He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. This is referred as the entitlement test, and is applied to determine whether the Fourteenth Amendment protects a plaintiff's interest in land-use regulation. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) ("It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner."); *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989). "A plaintiff has a legitimate claim of entitlement to a particular benefit if, absent denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *Gagliardi*, 18 F.3d at 192 (internal citations and quotations omitted); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985) ("[T]he question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.").

As the Second Circuit explained:

> If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test ...—"certainty or a very strong likelihood" of issuance—must be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case.

*RRI Realty Corp.*, 870 F.2d at 918. In other words, a plaintiff's claim to entitlement is based on whether the local governing board has the discretion to deny what the plaintiff seeks to obtain.

*Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996). "Even if … objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *RRI Realty Corp.*, 870 F.2d at 918. Simply put, with discretion, there is no entitlement. *Natale*, 170 F.3d at 263. Whether a protected property interests exists is a matter of law for the Court to decide. *RRI Realty Corp.*, 870 F.2d at 918.

It is undisputed that the Town has significant discretion to authorize the location of wireless facilities. In adjudicating this motion, the Court will take judicial notice of the Telecommunications Code, part of the Town's Code. "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see also Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs,* 488 F. Supp. 2d 22, 25-26 (D.N.H. 2007) (taking judicial notice of zoning board minutes and decision); *see also* FED. R. EVID. 201. The parties do not dispute the authenticity or accuracy of the relevant provision of the Town Code, as both extensively cite to it in their respective briefs.

As detailed in Chapter 198 of the Town's Code,

> Applications for a license agreement to erect, install, attach, deploy, operate, maintain, repair, replace, reinstall, alter Telecommunications Facilities in, over or upon municipal property and public rights-of-way shall be determined solely by the Town Board or Board of Trustees. … The application can be approved or denied, in whole or in part, with or without conditions as deemed advisable by the Town Board or Board of Trustees.

Telecommunications Code § 198-68.1(A)-(D). The Code continues to discuss the factors considered during the review process, aesthetic requirements and the necessities in order to set forth a valid application. *See Id.* § 198-68.1(D)-(K). The parties dispute the extent of the public hearing requirements and the notice required for any public hearings, *see* DE 30 at 18, but do not

dispute that the Town had significant discretion to grant or deny the applications at issue. Accordingly, § 198-68.1 vests the Board with exceedingly broad discretion to grant or deny applications for licenses pertaining to DAS antennas on public rights-of-way.

The Plaintiffs further contend that the Town's alleged lack of notice regarding a public hearing and the "sham" nature of the public hearing that took place creates a property right under the Fourteenth Amendment. *See* DE 30 at 16-18. This confounds the second part of the procedural and substantive due process requirements with the first condition. The alleged lack of notice is not an independent property interest, in and of itself, but either the apparent deviation from constitutionally protected procedures, in the case of procedural due process, or the potential arbitrary or irrational deprivation of a property interest, in the case of substantive due process. *See Fusco v. Conn.*, 815 F.2d 201, 205-06 (2d Cir. 1987). The lack of notice alleged is immaterial if it is not connected to a protected property right. Here, the Plaintiffs cannot show a constitutional entitlement to the denial of a permit for the installation of wireless facilities on public rights-of-way. Therefore, they cannot state a claim for substantive or procedural due process violations under § 1983.

Finally, the Court finds that the cases cited by the Plaintiffs are inapplicable. In *Logan*, the Supreme Court held that a discharged employee's right to use the Illinois Fair Employment Practices Act's scheme for adjudicating allegations of discrimination was a constitutionally protected property right protected by the Fourteenth Amendment. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-29, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). The Petitioner there successfully challenged the "established state procedure" of a state agency because that process did not "accord[] him [the] proper procedural safeguards." *Id.* at 436.

Here, it was not an established state procedure that destroyed the Plaintiffs' property interests by operation of law. Even if the Court were to construe the Plaintiffs' allegations as those that are "based on random, unauthorized acts by state employees," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996), the Fourteenth Amendment would still be undisturbed as the State has a meaningful post deprivation remedy. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 531-32, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

The final case cited by the Plaintiffs, *Jackson Hill Rd. Sharon Ct, LLC v. Town of Sharon* supports this Court's decision. No. 3:07-cv-1445, 2010 WL 2596927 (D. Conn. June 24, 2010) ("*Jackson*"). In *Jackson*, the court did not find that the lack of an impartial hearing on the Town of Sharon's zoning regulations at issue constituted an independent property interest. *Id.* at *7. Rather, Judge Hall examined whether the plaintiff showed a "clear entitlement" to success on the applications at issue with the Town Planning and Zoning Commission, the alleged property interest. *Id.* The court ultimately held that the Plaintiffs were not able to "show a 'certainty or a very strong likelihood' that their application would have been granted, even taking [their allegations] as true," and dismissed the claim. *Id.* (citing *Yale Auto Parts, Inc.*, 758 F.2d at 59).

As the Court has determined that the Plaintiffs lack a valid property interest in the approval of the installation of wireless facilities on public rights-of-way, the Court need not address the second requirement of a procedural or substantive due process claim. *See Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881-82; *Crowley*, 76 F.3d at 52.

## D. FIRST AMENDMENT CLAIMS

### 1. Right to Petition

The right to petition the government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois State Bar Ass'n*,

389 U.S. 217, 222, 88 S. Ct. 353, 356, 19 L. Ed. 2d 426 (1967); *Franco v. Kelly*, 854 F.2d 584, 2d Cir. 1988) (same). It applies with equal force to seek redress from all branches of government. *See Ca. Motor Trans. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972). In *Gagliardi*, the Second Circuit ruled that "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." 18 F.3d at 194-95 (internal citations omitted). Among the conduct listed by the Court as protected by the First Amendment includes "attend[ing] public meetings and hearings of the [Village] Board of Trustees, the Planning Board and the [Zoning Board of Appeals]." *Id*. at 195.

At this stage of the litigation, the Plaintiffs have successfully alleged a First Amendment claim under a right to petition theory. As such, the Court declines to dismiss Count I of the Plaintiffs' complaint.

### 2. Freedom of Speech

The Plaintiffs contend that the Defendants denied them the opportunity to address the Board at a public hearing based on the content of their message. This allegedly amounted to a prior restraint on the Plaintiffs, which had a censoring effect on presenting their message to a public forum.

"A 'prior restraint' on speech is a law, regulation or judicial order that suppresses speech— or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression. … It has long been established that such restraints constitute 'the most serious and the least tolerable infringement' on our freedoms of speech and press." *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (internal citations omitted). Any such limitation to freedom of speech "normally carries a heavy presumption against its constitutional validity." *United States v. Salameh*, 992 F.2d 445, 446-47 (2d Cir. 1993) (per

curiam) (citing *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 570, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976)).

The Town Defendants contend that any restraints on speech alleged are speculative in nature and that the Plaintiffs never attempted to exercise their First Amendment rights. This misinterprets the Plaintiffs' claim. Accepting all factual allegations in the complaint as true and drawing inferences in the light most favorable to the Plaintiffs, the complaint alleges that the Board's application of the TCA, in this instance, prevented the Town from holding a public hearing regarding the application at issue to allow the Plaintiffs and other citizens to address the Board. The Court cannot conclude based on the pleadings that the allegations are limited to hypothetical restraints on speech.

As such, the Court declines to dismiss Count IV of the Plaintiffs' complaint.

## E. AS TO THE SELF-DEFENSE CLAIM

Count V of the complaint contains two separate claims: (1) a Second Amendment right to self-defense claim; and (2) a substantive due process claim. As the Court has already disposed of the substantive due process claim, *see* Section II.C., the sole remaining claim in Count V is the alleged Second Amendment violation. The Plaintiffs claim that their fundamental right of self-defense was violated by the Defendants' approval and installation of DAS antennas near the Plaintiffs' properties. As the Defendants correctly contend, self-defense is inapplicable to the case at bar.

The Second Amendment protects a citizen's right to possess a firearm and use it for lawful purposes. *See District of Columbia v. Heller*, 554 U.S. 570, 572, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). As the United States Supreme Court ruled in *Heller*, self-defense of the home constitutes a "lawful purpose" and "the *central component* of the right [to bear arms]." *Id*. at 599

24

(emphasis in original). "Self-defense is a basic right, recognized by many legal systems from ancient times to the present, and the *Heller* Court held that individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 744, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (quoting *Heller*, 554 U.S. at 599).

The Plaintiffs assert that the Defendants' installation of DCA antennas on public rights-of-way near the Plaintiffs' properties violate the Plaintiffs' rights to self-defense as the alleged RF interference hampers their ability to be safe and secure within the confines of their own homes. This contention fundamentally misinterprets the Supreme Court's recent Second Amendment jurisprudence. *See generally*, *McDonald*, 561 U.S. 742; *Heller*, 554 U.S. 570. *McDonald* and *Heller*, two cases which are cited in the Plaintiffs' opposition brief, did not create an independent right to self-defense outside the context of the right to bear arms. Any attempt by the Plaintiffs to construe this "central component" of the Second Amendment as a protection against a local government's refusal to regulate RF interference from FCC-regulated wireless facilities and equipment is misguided at best. The Plaintiffs have failed to allege any violation of the Second Amendment in this action and failed to cite any other cases that recognize such a right in any other applicable law or constitutional provision.

Accordingly, the Plaintiffs' Second Amendment claim is dismissed.

## F.  As to Monell Liability

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court ruled that a municipal entity like the Town may be held liable under 42 U.S.C. § 1983 where a plaintiff demonstrates that the alleged constitutional violation was caused by a municipal "policy or custom." *Id*. at 694; *see also Harper v. City of N.Y.*, 424 F. App'x 36, 38 (2d Cir. 2011) (stating that to impose liability on a government entity under 42 U.S.C. §

1983, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom ...' and (2) 'a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.'") (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

Municipal policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citing *Monell*, 436 U.S. at 691). In the instant case, the Plaintiffs have successfully alleged both elements of *Monell* liability. Therefore, the Court declines to dismiss the complaint as against the Town Defendants with regard to *Monell* liability.

## G.  CONSPIRACY CLAIMS

The Defendants seek the dismissal of the Plaintiffs' § 1983 conspiracy claim with respect to all of the Defendants.

In order to successfully allege a § 1983 conspiracy claim, a plaintiff must successfully allege the underlying § 1983 cause of action. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009). § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. The Court's initial inquiry is whether the actions that a plaintiff alleges deprived that plaintiff of a constitutional right. *See Bisignano v. Harrison Cent. Sch. Dist.*, 113 F. Supp. 2d 591, 595-96 (S.D.N.Y. 2000) (citing *Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). As this Court has already dismissed the Plaintiffs substantive due process

(Count V) and procedural due process (Count II) claims, those counts are also dismissed as they relate to the Plaintiffs' corresponding § 1983 conspiracy claims.

In addition, due to the Court's dismissal of the underlying due process claims only the First Amendment § 1983 conspiracy claims remain. "In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (internal citations and quotation marks omitted), *overruled on other grounds*, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).

In support of their First Amendment claims, the Plaintiffs' plead that:

> the Town defendants … and defendant Crown Castle, adopted a plan and/or conspiracy to ensure that defendant Crown Castle would be able to install wireless telecommunication facilities adjacent to and/or in extremely close proximity to plaintiffs' homes, while ensuring that Plaintiffs would receive no notice whatsoever that the facilities would be built, and which guaranteed that the Plaintiffs would be deprived of any ability to be heard with respect to such installations.

Compl. ¶ 159. These First Amendment claims are wholly conclusory as they "fail to specify in detail the factual basis necessary to enable [the defendants] intelligently to prepare their defense[.]" *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). The complaint fails to allege the requisite elements of a § 1983 conspiracy claim and lacks the "details of time and place" necessary to state

a claim. *See Dwares*, 985 F.2d at 100. Accordingly, the Plaintiffs failed to successfully plead a § 1983 conspiracy claim related to their underlying First Amendment claims.

The Court finds that the Plaintiffs have failed to successfully plead a § 1983 conspiracy claim in this action. As such, the Court dismisses the Plaintiffs' § 1983 conspiracy claims as they pertain to all the Defendants.

Independently, the Plaintiffs' § 1983 conspiracy claims are dismissed as they pertain to Crown Castle for failure to state a claim. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). A conclusory allegation in a complaint that a private entity acted in concert with a state actor is insufficient to state a claim as to the private entity. *Id*. at 68. In the instant case, the Plaintiffs' complaint fails to successfully allege that Crown Castle conspired with the Town to commit an unconstitutional act.

The Court notes that the Plaintiffs contend, in their opposition motion, that Crown Castle is a necessary party under FED. R. CIV. P. 19(a)(1). This issue was only briefly mentioned and was not fully briefed in the instant motion. Neither party cites a single case on the issue. As such, the Court declines to rule on such an issue at this time.

Accordingly, the Court finds that all of the § 1983 conspiracy claims fail to state a claim upon which relief can be granted. As the only claims remaining in this case pertain to First Amendment violations allegedly committed by the Town Defendants, Crown Castle is dismissed from this action.

## H.  DECLARATORY JUDGMENT CLAIM

The Plaintiffs' third cause of action, a declaratory judgment claim, cannot be sustained. The Second Circuit has maintained that a declaratory judgment is a remedy, not a cause of action. *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("A request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights.").

The Court further finds that "[t]he third cause of action, for declaratory judgment, cannot be maintained because it parallels the other claims and merely seeks a declaration of the same rights and obligations." *Sullo v. Margab Realty, LLC*, 20 Misc. 3d 1117(A), 867 N.Y.S.2d 20 (Table) (N.Y. Sup. 2008). The Plaintiffs seek a declaratory judgment in Count III that is largely duplicative of the substance of the remaining prayers for relief. Hence, "Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006).

Although the Court dismisses the Plaintiffs' third cause of action, this ruling should not be construed as a finding that the Plaintiffs may not seek a declaratory judgment as a remedy for its surviving claims.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are granted in part and denied in part. The Plaintiffs may proceed as to Counts I, and IV against the Town Defendants. Further, the Town Defendants' motion to strike is granted in part and denied in part.

The Clerk of the Court is directed to dismiss Crown Castle from this action.

The caption is amended to read as follows:

29

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
PETER ABRAHAM, JODI ABRAHAM,
PERRY GIAMBRUNO, and JO-ANN
GIAMBRUNO,

               Plaintiffs,

       -against-

THE TOWN OF HUNTINGTON, THE TOWN
BOARD OF THE TOWN OF HUNTINGTON,
FRANK P. PETRONE as Supervisor of the
Town of Huntington, SUSAN A. BERLAND
as Councilwoman of the Town of Huntington,
EUGENE COOK as Councilman of the Town
of Huntington, and MARK A. CUTHBERTSON
as Councilman of the Town of Huntington,

               Defendants.
----------------------------------------------------------X

      It is **SO ORDERED**:

Dated: Central Islip, New York

      May 21, 2018

                               __/s/ Arthur D. Spatt__

                               ARTHUR D. SPATT

                       United States District Judge